UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In the matter of:

Bernard Sloane Glieberman,                          Case No. 15-55996-MBM
                                                     Chapter 11
_____Debtor._____/               Hon. Marci B. McIvor
Charles J. Taunt, Trustee,
Plaintiff/Counter-Defendant,

v.                                                   Adv. Proc. No. 15-05382

Digital Image, LLC, a Michigan limited
liability company; Lontray Enterprises, LLC,
a Michigan limited liability company,
Defendants/Counter-Plaintiffs.
_____/


**OPINION DENYING DEFENDANTS' MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS**

The matter before the Court is Defendants' Motion for Partial Judgment on the Pleadings.

For the following reasons, this Court DENIES Defendants' Motion, GRANTS judgment to

Plaintiff on Counts I, II, and V of the Trustee's First Amended Complaint, DISMISSES Counts

III, IV, VI, VII, and VIII of the Trustee's First Amended Complaint, and DISMISSES

Defendants' counterclaim.


I.

FACTUAL BACKGROUND

In 1999, Bernard Glieberman (hereinafter "Glieberman" or "Debtor") formed a limited

liability corporation named Lontray Enterprises, LLC ("Lontray"). At that time, Glieberman and

his wife each owned a 1% membership interest in Lontray. Their son, Lonie Glieberman, and

their daughter, Tracey Katzen, each owned a 49% membership interest in Lontray.  At all times

relevant to this Opinion, Glieberman remained the "Manager" of Lontray and retained complete

financial control over Lontray. (Opinion and Order #1 ("O&O #1"), Dist. Ct. Dkt. No. 395, at

5).[1]

At some point prior to June 8, 2001, Glieberman started a company called Digital Image,

Inc.  Glieberman was the 100% owner of Digital Image, Inc.  (Federal District Court Case No.

13-mc-50297: Report & Recommendation ("R&R"), Dist. Ct. Dkt. No. 340, at 2; "Joint

Statement", Dist. Ct. Dkt. No. 162, at ¶4; O&O #1, Dist. Ct. Dkt. No. 395).  Digital Image, Inc.

operated as "a post-production company working with advertising agencies to create

advertisements, among other things." (Joint Statement, Dist. Ct. Dkt. No. 162, ¶3).  The

company formerly known as Digital Image, Inc. is still operating today, although the name under

which the company operates is not in the record.  The company allegedly generates profits in

excess of $300,000 per year and was appraised four or five years ago at a value of $500,000.

(Bankruptcy Case No. 15-55996, Docket No. 319, Transcript of 2/14/17 hg, at 16-18).

On June 8, 2001, Glieberman established the Bernard Glieberman Revocable Trust.

(Joint Statement, Dist. Ct. Dkt. No. 162, ¶ 1).

At some point in 2008, Glieberman directed Frank Elias (presumably Glieberman's

attorney) to draft a "Stock Pledge Agreement".  The Stock Pledge Agreement was an agreement

---

[1]Many of the facts set forth in this Opinion are adopted from a Report and
Recommendation, a Joint Statement of Facts, and two Opinion and Orders issued by the Federal
District Court for the Eastern District of Michigan in case number 13-mc-50297.  The Report
and Recommendation will be referenced as "R&R" and the Opinion and Orders will be
referenced as O&O#1 and O&O#2.  District Court case number 13-mc-50297 was later
consolidated with District Court case number 14-cv-14488.

2

between Bernard Glieberman (as shareholder of Digital Image, Inc.), Tay Land, LLC (as borrower), Lontray Enterprises, LLC (as lender) and Frank Elias (as pledge holder). The Stock Pledge Agreement contained a provision which stated:

> b.     Borrower has requested that Lender subordinate its interest in certain collateral provided to secure the Note and in exchange, Lender is requiring that Borrower provide additional security for the loan at this time in the form of a pledge of the stock ("Stock") of Shareholder in Digital Image, Inc.

The Stock Pledge Agreement is undated and is signed by Bernard Glieberman as "Manager" of the lender Lontray, "Manager" of the borrower Tay Land, LLC, and "Shareholder" of Digital Image, Inc. (Lontray's Proof of Claim in Bankruptcy Case #15-55996 (Claim #15), attachment 5; Opinion & Order #2 (O&O #2), Dist. Ct. Dkt. No. 396, at 13).

Attached to the Stock Pledge Agreement is a document titled "Assignment Separate from Security." (Lontray's Proof of Claim (Claim #15), attachment 5). The Assignment purports to assign all of Glieberman's shares of Digital Image, Inc. stock to an unnamed assignee. The document was signed by Bernard Glieberman but was undated. (*Id.*).

On June 17, 2008, a UCC Financing Statement was filed stating that Lontray Enterprises, LLC was a creditor of Bernard Glieberman. The collateral was listed as "[a] pledge of Bernard Glieberman's stock in Digital Image, Inc." (Lontray's Proof of Claim (Claim #15), attachment 5).

On October 29, 2008, Glieberman signed a document called "consent of shareholder" that approved changing the name of Digital Image, Inc. to Digim, Inc. (R&R, Dist. Ct. Dkt. No. 340, at 4). That document stated that Glieberman was 100% shareholder of Digital Image, Inc. (*Id.*).

3

On December 31, 2008, Glieberman executed a document called "Assignment Separate from Certificate" which purported to assign and transfer all of the shares of the Digim, Inc. stock (hereinafter, the "Digim stock") to a newly created entity called Digital Image, **LLC.** (*Id.;* Joint Statement, Dist. Ct. Dkt. No. 162, ¶ 39).

On December 31, 2008, Glieberman, as "Manager" of Digital Image, **LLC** and as "Manager" of Lontray executed an operating agreement which provided that Lontray was now the sole member of Digital Image, **LLC**. (Joint Statement, Dist. Ct. Dkt. No. 162, ¶ 43, O&O#1, Dist. Ct. Dkt. No. 395, at 7). The operating agreement appointed Glieberman as vice president, treasurer and secretary of Digital Image, **LLC**. (O&O#1, Dist. Ct. Dkt. No. 395, at 7).

Digim, Inc. filed annual reports with the State of Michigan from 2009 through 2014. Bernard Glieberman signed all the annual reports as either "owner" or "president". (R&R, Dist. Ct. Dkt. No. 340, at 4)

On March 26, 2012, BR North 223, LLC ("BR North") obtained a default judgment against Bernard Glieberman and his personal trust, the Bernard Glieberman Revocable Living Trust, in the United States District Court for the Eastern District of California (the "California Judgment"). (O&O#2, Dist. Ct. Dkt. No. 396, at 2). The Judgment was in the amount of $81,170,331.74 plus attorneys' fees and post-judgment interest. (*Id.*).

On February 26, 2013, BR North registered the California Judgment in the United States District Court for the Eastern District of Michigan, under the caption of *BR North 223, LCC v. Glieberman et. al.*, Case No. 13-mc-50297 (hereinafter referred to as the "Glieberman Collection Action"). (R&R, Dist. Ct. Dkt. No. 340, at 1). The purpose of the Glieberman Collection Action was to collect on BR North's Judgment against Glieberman.

4

On March 3, 2014, BR North filed a "Joint Creditor's Emergency Motion to Seize and Transfer all Shares of Certain Stock Held By Debtor [Bernard Glieberman] in Aid of Collection of Judgment" (the "Turnover Motion"). (O&O#2, Dist. Ct. Dkt. No. 396, at 2-3). The Motion requested that Bernard Glieberman turn over all shares of the Digim stock to BR North in partial satisfaction of its Judgment against Glieberman. (*Id.* at 3-4). On March 10, 2014, Federal District Court Judge Paul Borman referred this Motion to Magistrate Judge R. Steven Whalen for hearing and determination under 28 U.S.C. § 636(b)(1)(A). (O&O#1, Dist. Ct. Dkt. No. 395, at 4; Order of Referral, Dist. Ct. Dkt. No. 153).

On June 11, 2014, Glieberman filed a Certificate of Dissolution of Digim, Inc. with the State of Michigan Department of Licensing and Regulatory Affairs. (O&O#1, Dist. Ct. Dkt. No. 395, at 8; Joint Statement, ¶ 50).

On August 5, 2014, the Magistrate Judge conducted an evidentiary hearing on BR North's Turnover Motion. At the August 5, 2014 evidentiary hearing, Magistrate Judge Whalen recognized that "[t]he issue in this case is narrow and it has to do with the ownership, I guess, status of Digim, Inc."(O&O#2, Dist. Ct. Dkt. No. 396 at 3, citing Dist. Ct. Dkt. No. 168, Transcript of Hg, at 9).

During the evidentiary hearing, Glieberman's counsel raised an argument that BR North's motion to seize the Digim stock sought relief that the Court could not grant because BR North's requested relief would impair Lontray's claimed interest in the Digim stock. Glieberman's counsel argued that, "Lontray is not a party to this lawsuit, Your Honor. And pursuant to M.C.L. §600.6128 until Lontray is a party and given the right to a jury trial, it cannot be deprived of its claimed ownership in the Digim stock." (O&O#2, Dist. Ct. Dkt. No. 396, at 4;

5

Dist. Ct. Dkt. No. 168, Transcript of Hg, at 17.)  After the conclusion of the evidentiary hearing, the parties filed supplemental briefs.  (Dist. Ct. Dkt. Nos. 171, 172, 175.)  In its supplemental response brief, the Judgment Debtors (Glieberman and his Trust) argued that Lontray must be joined as a party pursuant to Mich. Comp. Laws § 600.6128 because Lontray claimed ownership of "all the assets of Digim, including the Stock by virtue of its ownership of Digital Image, LLC" and that Lontray "would have the right to a trial by jury." (O&O#2, Dist. Ct. Dkt. No. 396, at 4; Dist. Ct. Dkt. No. 172, at 29-30.)  BR North responded in its supplemental reply brief that Lontray did not own the Digim stock and, therefore, nothing was being taken from Lontray.  BR North also argued that Lontray had actual notice of the Glieberman Collection Action and that the fact "that it has failed to intervene illustrates just how disingenuous this argument is." (O&O#2, Dist. Ct. Dkt. No. 396, at 4; Dist. Ct. Dkt. No. 175, at 9-10.)

On November 24, 2014, BR North filed a six count complaint against Bernard Glieberman, Sandra Glieberman, Lonie Glieberman, Lindsey Bobay Glieberman, Jeffrey Katzen, Tracey Katzen, Black Bear, Inc., Lontray Enterprises, LLC, Digim Inc. f/k/a Digital Image, Inc. and Digital Image, LLC in Federal District Court for the Eastern District of Michigan (Case No. 14-cv-14488, the "Fraudulent Transfer Action").  The first three counts of the complaint (hereinafter referred to as the "Fraudulent Transfer Action") alleged that Glieberman had fraudulently transferred the assets of Black Bear, Inc., a ski resort operating as Mt. Bohemia located in Michigan's Upper Peninsula, to his son Lonie Glieberman.  In Counts IV-VI of the Complaint, BR North alleged that Glieberman's transfer of his shares in Digital Image, Inc. to Digim, Inc. and then to Digital Image, LLC, and the transfer of Glieberman's membership interest in those entities from himself to Lontray, were fraudulent transfers.

6

On April 2, 2015, in the Fraudulent Transfer Action, BR North filed a motion for leave to file a second amended complaint and a motion to consolidate the Glieberman Collection Action with the Fraudulent Transfer Action. (Fraudulent Transfer Action, Dist. Ct. Dkt. No. 25).

On September 18, 2015, the Magistrate Judge issued his Report and Recommendation in the Glieberman Collection Action (Federal District Court Case No. 13-mc-50297). The Report and Recommendation found:

    (1)    In 2008, Glieberman (and not the Trust) owned Digital Image, Inc.

    (2)    Glieberman (and not the Trust) was the sole shareholder of Digital Image, Inc.

    (3)    Glieberman changed Digital Image, Inc.'s name to Digim, Inc.

    (4)    The document executed by Glieberman called "Assignment Separate from Certificate" which sought to assign the Digim stock to Digital Image, LLC was ineffective because Glieberman signed it as "Trustee" of the Trust and made the assignment as "Trustee", but the asset was not an asset of the Trust.

    (5)    Digim, Inc. was not dissolved until June 11, 2014 when Glieberman filed a Certificate of Dissolution.

(R&R, Dist. Ct. Dkt. No. 340, at 6-7). In his Report and Recommendation, the Magistrate Judge concluded:

> Based on the testimony and exhibits, I find that Bernard, not the Trust, was always the owner of Digital Image, Inc. and Digim, and that his ownership continued through 2014, when he caused the Certificate of Dissolution to be filed. At no time did Bernard legally transfer any shares of Digim to Digital Image, LLC, or to anyone else. Digital Image, LLC, never had a valid ownership interest in Digim. Thus, even assuming the validity of the transfer of Digital Image, LLC to Lontray, that transfer did not include Digim. Therefore, Plaintiff may execute on the shares of Digim under M.C.L. § 600.6104(3) and (5).

(R&R, Dist. Ct. Dkt. No. 340, at 7). The Magistrate Judge recommended that BR North's motion to seize the stock be granted and that Glieberman be required to "transfer all shares of stock in Digim, Inc. to Plaintiff within 14 days of a final order granting the motion." (*Id.*).

7

On October 5, 2015, BR North filed a request for clarification of the Report and Recommendation. (Glieberman Collection Action, Objection to R&R, Dist. Ct. Dkt. No. 345). BR North did not object to the relief awarded by the Report and Recommendation, but sought further clarification from the District Court that: (I) the purported transfer from Digim, Inc. to Digital Image, LLC, to Lontray is null and void, *ab initio*; (ii) all actions taken by Digital Image, LLC and/or Lontray to dissolve or otherwise terminate Digim, Inc. as a separate independent operating entity are null and void, *ab initio*; and (iii) any actions of Digital Image, LLC or Lontray as the purported owners of Digim, Inc. as an operating company are deemed to have been taken by Digim, Inc. itself. (*Id.*, at 12-13.)

On October 5, 2015, Glieberman and the Trust filed an objection to the Report and Recommendation arguing that the Magistrate Judge had erred by: (1) not permitting Lontray to be joined as a party; and (2) rejecting Debtor's argument that Lontray had a superior perfected security interest in the Digim stock. (Glieberman Collection Action, Dist. Ct. Dkt. No. 344, Objection, at 2-3 (now withdrawn).)

On October 22, 2015, Glieberman and the Trust filed a Response to BR North's request for clarification. (Response, Dist. Ct. Dkt. No. 346).

On November 2, 2015, Glieberman (hereinafter referred to as "Debtor") filed a personal bankruptcy under Chapter 11, thus staying the Glieberman Collection Action and the Fraudulent Transfer Action.

On November 16, 2015, BR North filed a motion for relief from stay. The motion requested a lift of stay so that the District Court could rule on the objections to the Report and

Recommendation and render a final determination as to the ownership and disposition of the Digim stock.

On December 9, 2015, Debtor filed a four count adversary complaint in the bankruptcy case against Digital Image, LLC and Lontray Enterprises, LLC. The first two counts of Debtor's complaint sought a declaratory judgment that the Digim stock belonged exclusively to Debtor. Debtor's adversary complaint stated:

> Debtor, not the Trust, is and always has been the owner of one hundred (100%) of the stock of Digim, Inc. f/k/a Digital Image, Inc. Debtor's ownership continued through and included the filing date of the bankruptcy petition. At no time did Debtor legally transfer any share of Digim, Inc. to Digital Image, LLC or any other party.

(Adv. No. 15-5382, Complaint, Dkt. No. 1, at ¶¶ 38-40). The relief requested by Debtor was:

> a declaratory judgment that Debtor is the owner of one-hundred percent (100%) of the stock of Digim, Inc. f/k/a Digital Image, Inc., and granting such other, further and different relief as the Court deems just and proper.

(*Id.*, at ¶ 6).

Count III of Debtor's adversary complaint stated that Lontray and Digital Image, LLC had been using the assets of Digim, Inc. to generate revenue since 2009, that Digim, Inc. had been profitable, and that the profits had been distributed to Lontray and Digital Image, LLC. Count III of the Complaint requested that all distributions paid to Lontray and Digital Image, LLC be paid back to Debtor as the sole owner of the Digim stock. Count IV of the adversary complaint sought a determination that neither Lontray nor Digital Image, LLC had a security interest in the Digim stock.

Counts I, II, and IV raised issues identical to those being considered by the District Court. On January 14, 2016, this Court stayed this adversary proceeding pending the District

9

Court's ruling on the Report and Recommendation.

On December 21, 2015, twelve days after filing the adversary proceeding, Debtor filed an objection to BR North's motion for lift of stay. Debtor's objection to the motion for lift of stay stated:

> 19.     In order to determine Digim, LLC's[2] and/or Lontray's interest (or lack thereof) in the Digim, Inc. stock, those entities must have an opportunity to contest the matter. This is the specific reason why the Debtor has commenced the Adversary to determine these issues.
>
> 20.     Assuming the Court grants the requested relief from stay, the Debtor will nonetheless still have to prosecute the Adversary. No judicial resources will be saved. To the contrary, the District Court will needlessly spend its resources reviewing the Report, and hearing transcript, for the sole purpose of entering an order that will have no binding effect on either Digim, LLC or Lontray.

(Adv. No. 15-5382, Dkt. No. 55, Debtor's Objection).

On January 14, 2016, this Court overruled Debtor's objections to the lift of stay motion and granted BR North's motion for relief from stay. The lifting of the stay permitted the District Court to rule on the objections to the entry of the Report and Recommendation and enter a judgment regarding ownership and disposition of Digim, Inc.

On January 28, 2016, in the Glieberman Collection Action, Lontray filed a Motion for Enforcement of the Mandatory Joinder Provisions of Michigan Trying Title Statute (MCL §600.6128)(hereinafter, the "Joinder Motion"). In the Joinder Motion, Lontray argued that it had a security interest in the Digim stock and, therefore, was a necessary party in the Glieberman Collection Action.

_____

[2]The reference to Digim, **LLC** appears to be a typographical error because the entities involved in this case are Digital Image, Inc., Digim, Inc., and Digital Image, LLC. There is no entity called Digim, **LLC**.

10

On January 29, 2016, Debtor withdrew his objections to the Magistrate Judge's Report and Recommendation and withdrew his response to BR North's request for clarification of the Report and Recommendation in the Glieberman Collection Action. (Glieberman Collection Action, Dist. Ct. Dkt. Nos. 358 & 359.)

Between February 2016 and June 2016, Debtor and Lontray stipulated four times to the extension of the deadline for Lontray to file a claim in Debtor's bankruptcy case.

On December 12, 2016, Debtor filed his notice of conversion of case from Chapter 11 to Chapter 7.

On December 21, 2016, Charles Taunt was appointed as Chapter 7 trustee. On December 21, 2016, the Trustee filed a notice of assets.

On December 22, 2016, the District Court issued two opinions and orders in the Glieberman Collection Action. The first opinion and order: (1) denied BR North's request for clarification of the Report and Recommendation; (2) adopted the Magistrate Judge's Report and Recommendation; (3) granted BR North's Motion to seize and transfer shares of certain stock held by Debtor (the Digim stock); and (4) ordered Glieberman to turnover all shares of the Digim stock to BR North. In its opinion, the District Court concluded:

> For all these reasons, the Court denies BR North's Objection (ECF No. 344) and ADOPTS the Magistrate Judge's Report and Recommendation (ECF No. 340). The Court also ORDERS Judgment Debtor Bernard Glieberman to transfer all shares of stock in Digim, Inc. to BR North within fourteen (14) days of this Order.

(O&O#1, Dist. Ct. Dkt. No. 395, at 14).

The second opinion and order issued by the District Court on December 22, 2016: (1) denied Lontray's Joinder Motion (Glieberman Collection Action, Dist. Ct. Dkt. No. 357), and (2)

11

denied Lontray's motion to file a supplemental brief. (O&O #2, Dist. Ct. Dkt. No. 396, at 18). In its Joinder Motion, Lontray had argued that it had an interest adverse to that of Bernard Glieberman resulting from Lontray's alleged security interest in the Digim stock. Lontray then argued that, under Michigan's Trying Title to Debt statute, MCL § 600.6128, Lontray's adverse interest required Lontray to be joined as a party in the Glieberman Collection Action. Lontray also argued that it should be allowed to intervene in the Glieberman Collection Action pursuant to Fed. R. Civ. P. 19 and 24(a).

The District Court rejected Lontray's arguments and denied Lontray's motion to be joined as a party to the Glieberman Collection Action. The District Court ruled that the existence of a secured interest was immaterial because the alleged secured interest did not create an adverse interest between Lontray and judgment debtor Bernard Glieberman. The District Court stated:

> The Court finds, however, that the timing and sequence of events is not evidence of new adverse interests between these parties [Glieberman/his Trust and Lontray], but actually evidence of coordination between the Judgment Debtors [Glieberman and his Trust] and Lontray towards the common goal of delaying resolution of this matter.

(O&O #2, Dist. Ct. Dkt. No. 396, at 18). The District Court further stated:

> In the present action, as examined *supra*, Lontray waited until after the Magistrate Judge issued an unfavorable report and recommendation, waited until after Judgment Debtor filed its objection to that Report and Recommendation, waited until after the Judgment Debtor filed for bankruptcy and espoused a new adverse position, and to move to intervene. The Court finds that Lontray now seeks to intervene in this action as an attempt to re-litigate the issue of whether the Digim stock transfer was effective after waiting patiently on the sidelines for the issue to be resolved in the first place – Lontray's motion to intervene is both indefensibly two years late in light of its actual notice [of] the pending motion. The prejudice to the original parties is great - as further delay on this issue (which was first raised two years ago) is prejudicial to both the Judgment Creditor and the Judgment Debtor, who now both agree that Glieberman never legally or validly

12

transferred ownership of the Digim stock. Finally, there are "unusual circumstances" in this action that militate *against* allowing intervention where it is clear that the Judgment Debtors and Lontray appear to be coordinating their litigation to maximize and thwart judicial economy both here and in the related bankruptcy proceeding.

(*Id*. at 20-21).

On January 5, 2017, Debtor stipulated to the substitution of Charles Taunt as Plaintiff in this adversary proceeding.

On February 21, 2017, the Chapter 7 Trustee filed an Amended Complaint in this adversary proceeding (Adv. Proc. No. 15-5382). Count I requests a declaratory judgment that the Digim stock, and all assets associated with that stock, belong to Debtor. Count II requests a declaratory judgment that all profits generated by Digim, Inc. are property of the bankruptcy estate. Count III requests "Revocation of the Dissolution of Digim". Count IV requests "Judicial Supervision of the Corporate Affairs" of Digim, Inc. Count V requests the avoidance of Lontray's alleged security interest. Count VI requests a determination that the "stock pledge agreement" was ineffective to assign Debtor's voting rights to Lontray. Count VII seeks to preserve any avoided interest for the benefit of the bankruptcy estate. Count VIII seeks to deny Lontray or Digital Image, LLC their right to file a proof of claim in the bankruptcy under 11 U.S.C. § 502(b).

On March 24, 2017, Defendants Digital Image, LLC and Lontray filed an answer to the first amended complaint. Defendants also filed a counterclaim.

On March 30, 2017, the United States District Court issued an Opinion and Order regarding BR North's Motion for leave to file a second amended complaint in the Fraudulent Transfer Action (Federal District Court Case 14-cv-14488) and to consolidate the Glieberman

13

Collection Action (Federal District Court Case 13-mc-50297) with the Fraudulent Transfer Action. For purposes of this Opinion, the relevant portion of that Opinion and Order was the portion which granted BR North's request to consolidate the Glieberman Collection Action with the Fraudulent Transfer Action (hereinafter, the "District Court Action").

On May 4, 2017, this Court entered a scheduling order in this adversary proceeding.

On May 10, 2017, the District Court entered an order permitting the chapter 7 trustee, Charles Taunt, to substitute in as the Plaintiff in the District Court Action. The consolidated cases are now known as *Charles J. Taunt, Trustee v. Bernard S. Glieberman, et al*, Case No. 14-cv-14488.

On May 19, 2017, the Trustee filed a motion for authority to compromise the counts of the District Court Action which relate to the transfer of the Black Bear stock from Debtor to his son Lonie Glieberman (Counts I-III). This motion was filed in the main bankruptcy case. (Case No. 15-55996).

On July 20, 2017, Digital Image, LLC and Lontray filed a Motion for Partial Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) in this adversary case. Defendants sought dismissal of Counts I and II of the Trustee's First Amended Complaint.

On August 23, 2017, this Court issued an Opinion and Order granting the Trustee's motion to compromise Counts I-III of the District Court Action.

On October 11, 2017, the District Court reversed the Bankruptcy Court's August 23, 2017 Opinion and Order allowing for the compromise of Counts I-III of the Federal District Court Action. (Dist. Ct. Dkt. No. 66, at 2).

On December 12, 2017, Plaintiff filed a response to Defendant's Motion for Partial

14

Judgment on the Pleadings.

On January 25, 2018, Defendants filed a Reply to Plaintiff's Response.

On January 30, 2018, this Court held a hearing on Defendants' Motion for Partial Judgment on the Pleadings.


II.

ANALYSIS

A. <u>Standards for Motions Brought Under Fed. R. Civ. P. 12(c)</u>

Defendants' Motion for Partial Judgment on the Pleadings is brought pursuant to Fed. R. Civ. P. 12(c). That rule states:

> **(c) Motion for Judgment on the Pleadings.** After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings.

A court that rules on a defendant's motion to dismiss on the pleadings under Fed. R. Civ. P. 12(c) "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Engler v. Arnold*, 862 F.3d 571, 574-575 (6th Cir. 2017) (*quoting Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001)). To survive a Rule 12(c) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.*, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere labels and conclusions are not enough; the allegations must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Engler*, 862 F.3d at 575 quoting *Iqbal*, 556 U.S. at 678.

15

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) differs from a motion for summary judgment under Fed. R. Civ. P. 56 in that Rule 12(c) motions limit the Court's consideration to matters set forth in the pleadings only while Rule 56 motions allow the Court to consider matters outside of the pleadings, such as affidavits and other evidence. *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 502 (6th Cir. 2006).

B.    Overview of the Motion for Partial Judgment on the Pleadings.

On July 20, 2017, Defendants filed the instant Motion for Partial Judgment on the Pleadings in this adversary proceeding. The Motion seeks dismissal of Counts I and II of the Trustee's Amended Complaint. Count I of the First Amended Complaint seeks a declaratory judgment that the corporate assets of Digim, Inc. are property of the bankruptcy estate. Count II of the First Amended Complaint seeks a declaratory judgment that the profits generated by Digim, Inc. are property of the bankruptcy estate. In their Motion, Defendants make three arguments: (1) the Trustee cannot recover any assets from Defendants because those assets were transferred to Digital Image, LLC; (2) even if the assets of Digim, Inc. were never transferred to Digital Image, LLC, Lontray has a perfected security interest the stock of Digim, Inc. which precludes the Trustee from administering the stock as an asset of the bankruptcy estate; and (3) the Trustee's efforts to recover the assets of Digim, Inc. are barred by the statute of limitations.

For reasons that will be fully set forth below, the Court rejects all of Defendants' arguments. Defendants' arguments have all been made and rejected by both this Court and the District Court. This Court is bound by the doctrines of collateral estoppel and *res judicata* to follow the rulings in prior proceedings of the District Court. The doctrines of *res judicata* and

collateral estoppel require this Court to find that: (1) Debtor is the 100% owner of Digim, Inc., which includes both the corporate assets and the stock; (2) the profits flowing from Debtor's ownership of Digim, Inc. are property of the bankruptcy estate; (3) Lontray does not have an enforceable security interest in the Digim stock because Debtor and Lontray are related entities controlled by Debtor; and (4) because Debtor never transferred Digim, Inc. to Digital Image, LLC, the statute of limitations on collection actions has no applicability to this case.

C.    The Doctrines of Collateral Estoppel and *Res Judicata*

The arguments raised by Defendants in their Motion for Partial Judgment on the Pleadings are defeated by the doctrines of collateral estoppel and *res judicata*.

1.    Collateral Estoppel

The doctrine of collateral estoppel has been well summarized in *In re Trost*, 545 B.R. 193 (Bankr. W.D. Mich. 2016), a recent bankruptcy decision out of the Western District of Michigan. In *Trost*, the court stated:

> The doctrine of collateral estoppel, also known as issue preclusion, "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." *In re Markowitz*, 190 F.3d at 461 (citations omitted); *see Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir.1981) (bankruptcy court not required to redetermine all underlying facts). The Sixth Circuit has explained that:
>
> > Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation ... To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

17

*Trost*, at 202-03.

When the prior action was litigated in a federal court, the federal law of preclusion must generally be applied to determine the preclusive effect of that judgment. *See, J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 213–14 (6th Cir.1996) (stating federal issue and claim preclusion principles should be applied in successive federal diversity actions) (citations omitted); *John Richards Home Bldg. Co., LLC v. Adell (In John Richards Home Bldg. Co., LLC),* 404 B.R. 220, 237 (E.D. Mich. 2009)(federal courts apply federal law when determining preclusive effect of prior federal judgment).

The elements of collateral estoppel under federal law are:

(i) the issue in the subsequent litigation is identical to that resolved in the earlier litigation;

(ii) the issue was actually litigated and decided in the prior action;

(iii) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation;

(iv) the party to be estopped was a party to the prior litigation (or in privity with such a party); and

(v) the party to be estopped had a full and fair opportunity to litigate the issue.

*Verizon North, Inc. v. Strand*, 367 F.3d 577, 583 (6th Cir. 2004).


2.    *Res Judicata*

*Res judicata* bars all claims and defenses that were, or might have been, presented as though they had been actually litigated. The rationale behind *res judicata* is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94

(1980).  *Res judicata* "prevents plaintiffs from splitting their claims by providing a strong incentive for them to plead all factually related allegations and legal theories for recovery the first time they bring suit." *Apparel Art Internat'l Inc. v. Amertex Enterp. Ltd.,* 48 F.3d 576, 583 (1st Cir. 1995).  The burden is on the party asserting *res judicata* to show that the later-filed suit is barred.  *Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002).

The four elements of *res judicata* are:

(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Bittinger v. Tecumseh Products, Co.,* 123 F.3d 877, 880 (6th Cir. 1997).  Principles of claim preclusion "do not always require one to have been a party to a judgment in order to be bound by it."  *Richards v. Jefferson Cnty, Ala.*, 517 U.S. 793, 798 (1996).  Rather, "there is an exception when . . . there is 'privity' between a party to the second case and a party who is bound by an earlier judgment." *Id.*

D.     Application of the Doctrines of Collateral Estoppel and *Res Judicata* to Defendants' Arguments

1.     Defendants are barred by the doctrine of collateral estoppel from asserting an ownership interest in Digim, Inc.

The first element of collateral estoppel requires that the issue in the subsequent litigation be identical to the issue resolved in the earlier litigation.  In their Motion for Partial Judgment on the Pleadings, Defendants appear to argue that the issue in this litigation is the ownership of the Digim Inc. corporate assets, whereas the issue in the District Court was the ownership of the Digim Inc. stock.  Defendants assert that these are two separate issues and that, notwithstanding

19

the District Court's conclusion that Debtor owns the Digim, Inc. stock, this Court must conclude that Defendants own the corporate assets of Digim, Inc. This argument, raised for the first time in Defendants' Reply Brief (A.P. 15-5382, Dkt. No. 76), asserts that the District Court's award of full ownership of Digim's stock to BR North, nets BR North nothing. According to Defendants, the Digim stock is stock in a shell corporation; any assets Digim Inc may have owned or held were sold or transferred to Defendants. Based on the entire record in this case, the Court must reject that argument.

Throughout the extensive litigation in the District court regarding ownership of Digim Inc., neither Debtor or Defendants ever explicitly argued that the Digim stock, and the corporate assets owned by Digim, Inc., were separate assets. To the extent that the distinction was implicitly raised by way of Debtor's argument that a transfer of corporate assets took place because Lontray gave some form of consideration which required the transfer of assets, that argument was rejected by the District Court. Because the parties never expressly asserted that there were two pools of assets, and because the evidence supported the conclusion that there was a unity of Debtor's ownership of the Digim corporate assets and the Digim stock, neither the Report and Recommendation nor the District Court's Opinion adopting the Report and Recommendation distinguished between stock ownership and asset ownership. The District Court simply framed the issue before it as "the ownership of Digim, Inc." (O&O#1, Dist. Ct. Dkt. No. 395 at 4, citing Dist. Ct. Dkt. No. 168, Transcript of Hg, at 9; See also, O&O#2, Dist. Ct. Dkt. No. 396 at 3, citing Dist. Ct. Dkt. No. 168, Transcript of Hg, at 9). The District Court Opinion adopting the Report and Recommendation generally refers to both the Digim, Inc. stock and the Digim, Inc. assets collectively as the "Digim stock", and it is clear from the Opinion that Debtor's ownership

20

of the Digim stock is indistinguishable from Debtor's ownership of the corporate assets of Digim, Inc.

In keeping with the ruling of the District Court, this Court finds that Debtor's ownership of 100% of the Digim, Inc. stock is indistinguishable from Debtor's ownership of 100% of the assets of Digim, Inc. Any other conclusion leads to an absurd result. If this Court were to accept Defendants' argument that Defendants own (and have *long* owned) all of Digim, Inc.'s assets, then the entirety of the prior litigation, which was expensive, protracted, and fiercely fought, was in pursuit of, literally, nothing.

The issue of the ownership of Digim, Inc. (both the stock and its assets) has been fully litigated. Ownership of Digim, Inc. includes the profits, which should have flowed back to Debtor as a result of his 100% ownership of Digim, Inc. The doctrine of collateral estoppel precludes Defendants from re-litigating the issue of who owns the assets of Digim, Inc. Both the stock and the corporate assets are property of Debtor's bankruptcy estate.

This Court agrees, however, with both the District Court and Defendants that there are remaining issues relating to the *revenue* generated by Digim, Inc. It is clear from the record in this case that when Debtor attempted to assign all of his stock in Digim, Inc. to Digital Image, LLC, and then immediately made Lontray (an entity in which his children hold a 98% interest) the 100% member of Digital Image, LLC, Debtor's goal was to transfer his assets to an entity in which his children had a 98% membership interest. Neither this Court nor the District Court have ever seen any of Digim, Inc.'s business records. Was all of the money that flowed through Digim, Inc. to Lontray a fraudulent transfer, or was some of the money actually earned and owed to Lontray and Debtor's children? While this Court cannot be certain, this Court believes that this

was the District Court's concern when it decided not to "order the disgorgement or the clawback of assets far upstream from the single transaction (the attempted transfer of the Digim stock) examined during the evidentiary hearing and addressed in the Report and Recommendation." (O&O #1, Dist. Ct. Dkt. No. 395, at 13). Whether or not Debtor's estate is entitled to some or all of the revenue generated by Digim, Inc. between 2008 and the present depends on whether and to what extent Lontray or Debtor's children participated in the operation of Digim, Inc. Were they employees? Were they on the Board of Directors? Were they in a position to direct that Digim, Inc.'s profits flow to Lontray or to Debtor's children? Did Lontray or Debtor's children give some other consideration to Debtor in exchange for a slice of Digim, Inc.'s profits? These questions need to be answered before this Court can enter a judgment requiring Lontray or the Glieberman children to pay money to Debtor's bankruptcy estate. These questions, however, will be litigated in Adv. Proc. No. 17-4751, *Charles Taunt v. Tracey Katzen, et al.* The issues of who owns Digim, Inc. and whether Digim, Inc. can be liquidated for the benefit of Debtor's creditors, have been fully litigated before the District Court. The first requirement for collateral estoppel is satisfied.

The second and third requirements of collateral estoppel are that the issues were actually litigated in the prior action and that the resolution of the issues was essential to the judgment on the merits in the prior action. This Court finds that the issue of the ownership of Digim, Inc. has been fully litigated after an evidentiary hearing, and the resolution of ownership was essential to the District Court's December 22, 2016 Opinion and Order. Therefore, the second and third requirements of collateral estoppel have been satisfied.

The fourth element of federal collateral estoppel requires that the party to be estopped was

a party, or in privity with a party, to the prior litigation. The Opinion and Order denying

Lontray's Motion for Joinder issued by the District Court on December 22, 2016 conclusively

established that Defendants in this suit are in privity with Bernard Glieberman, the Defendant in

the Glieberman Collection Action. (O&O#2, Dist. Ct. Dkt. No. 396). In its opinion denying

Lontray's Joinder Motion, the District Court ruled that Lontray was not a necessary party to the

litigation between BR North and Debtor, because Lontray's interests were fully aligned with

those of Debtor. The Court stated:

> The Court finds, however, that the timing and sequence of events is not evidence
> of new adverse interests between these parties [Judgment Debtors (Glieberman
> and his Trust) and Lontray], but actually evidence of coordination between the
> Judgment Debtors [Glieberman and his Trust] and Lontray towards a common
> goal of delaying resolution of this matter.

(O&O#2, Dist. Ct. Dkt. No. 396, at 18).

This Court finds that the District Court's conclusion that Debtor and Lontray were

coordinating their efforts to thwart BR North's collection efforts establishes that Defendants

Lontray and Digital Image, LLC are in privity with Debtor for purposes of this adversary

proceeding. In the District Court Action, Lontray and Debtor were working together to delay

BR North's collection efforts against Debtor. In this adversary proceeding, Lontray is making

the exact same arguments rejected by the District Court. Lontray's sole goal in this Court is to

assist Debtor in keeping Digim, Inc. from creditors and preserving those assets for Debtor and

his children. Debtor and Lontray are in privity with each other, and the fourth element of

collateral estoppel is satisfied.

The fifth element of federal collateral estoppel requires that the party estopped had a full

and fair opportunity to litigate the issues. The issue in the District Court was the ownership of

Digim, Inc. As fully detailed in the statement of facts, both Debtor and Defendants (Lontray and Digital Image, LLC) argued multiple times in the prior litigation that Lontray had an interest in Digim, Inc. Debtor first raised the argument at the evidentiary hearing before Magistrate Judge Whalen. The argument was rejected by the Magistrate Judge in his Report and Recommendation. Apparently unhappy with the Magistrate Judge's rejection of Debtor's argument that Lontray was a necessary party, Lontray filed its own Motion for Joinder on January 28, 2016. In that motion, Lontray argued that the Digim stock had been transferred to Digital Image, LLC and Lontray and, therefore, Lontray was a necessary party in the Glieberman Collection Action. In his December 22, 2016 Opinion, the District Court again rejected Lontray's argument that Lontray was a necessary party to the litigation. The District Court stated:

> The Court finds that Lontray now seeks to intervene in this action as an attempt to re-litigate the issue of whether the Digim stock transfer was effective after waiting patiently on the sidelines for the issue to be resolved in the first place - Lontray's motion to intervene is both indefensibly two years late in light of its actual notice [of] the pending motion. The prejudice to the original parties is great - as further delay on this issue (which was first raised two years ago) is prejudicial to both the Judgment Creditor and the Judgment Debtor, who now both agree that Glieberman never legally or validly transferred ownership of the Digim stock.

(O&O#2, Dist. Ct. Dkt. No. 396, at 20-21). The record in the District Court clearly demonstrates that Defendants had a full and fair opportunity to litigate the issue of ownership of Digim, Inc.

All of the elements of federal collateral estoppel are met in this case. Defendants are estopped from arguing that the Debtor successfully transferred Digim, Inc. to Defendants. Defendants' Motion for Partial Judgment on the Pleadings is denied. Digim, Inc., both its stock and assets, are property of Debtor Bernard Glieberman's bankruptcy estate.

2. <u>Defendants are  barred by the doctrine of *res judicata* from asserting that their alleged security interest is a new claim in this adversary proceeding.</u>

Defendant Lontray's second argument as to why Defendants are entitled to judgment on the pleadings on Counts I and II of Plaintiff's Amended Complaint is that Lontray has a secured interest in Digim, Inc. which precludes the Trustee from liquidating Digim, Inc. for the benefit of the bankruptcy estate.  This Court finds that the doctrine of *res judicata* defeats Defendant Lontray's argument.

The first two elements of *res judicata* are that: (1) there be a final decision on the merits by a court of competent jurisdiction; and (2) the subsequent action must be between the same parties or their privies.  It is undisputed that the two decisions of the District Court, issued on December 22, 2016, were final judgments on the merits.  For the reasons set forth above in the discussion of collateral estoppel, this Court also finds that Debtor (Defendant in the District Court Action) and Defendants in this adversary proceeding (Digital Image, LLC and Lontray) are privies.  Plaintiff in this adversary proceeding (the chapter 7 Trustee) seeks to administer Digim, Inc. for the benefit of Debtor's creditors.  Therefore, Plaintiff Trustee is now in privity with the interests of creditor BR North (Plaintiff in the District Court Action).   Therefore, the first two elements of *res judicata* have been satisfied.

The third requirement for the application of *res judicata* is that the issue in the subsequent action either was, or should have been, litigated in the prior action.   In its Motion for Partial Judgment on the Pleadings, Defendant Lontray appears to be arguing that it has never had the opportunity to litigate its claim that it has a security interest in Digim, Inc.  Defendants cite the following sentence from the District Court in support of its argument:

. . . the Court finds that the issue of the validity of Lontray's lien or secured status

25

in Digital Image, Inc. was neither adjudicated by the Magistrate Judge, nor an issue that bore upon the ownership of the Digim stock in 2008.

(O&O#2, Dist. Ct. Dkt. No. 396, at 13-14).

This Court finds that this sentence does not support Defendants' argument that it has never had the opportunity to litigate the validity of its security interest. The District Court did not explicitly address the validity of a security interest between Debtor and Lontray because collusion between Debtor and Lontray made any alleged security interest by Lontray unenforceable against a creditor of Debtor. In other words, the issue that mattered to the District Court was not whether Lontray's lien was enforceable against Debtor; the issue was whether the lien precluded a creditor of Debtor from reaching the assets of Digim, Inc., notwithstanding the existence of Lontray's lien. Because Debtor controlled Lontray at the time the Digim stock was allegedly pledged to Lontray, Debtor was essentially granting himself a security interest in the Digim stock. In awarding the Digim, Inc. stock to BR North, the District Court had to have concluded that a security interest granted by Debtor to an entity in total privity with Debtor was unenforceable against a third party. Whether or not Debtor granted a secured interest in Digim, Inc. to Lontray had no bearing upon the issue of whether a creditor could obtain a judgment against Debtor's ownership interest in Digim, Inc. Defendants' argument that it has a secured interest in the Digim, Inc. stock was raised and rejected by the District Court.

The fourth requirement of the doctrine of *res judicata* is that there is an identity of claims between the first and second actions. There is an identity of claims where the facts and events creating the right of action and the evidence necessary to sustain each claim are the same. *Heike v. Central Michigan Univ. Bd. of Trustees*, 573 Fed. Appx. 476, 480 (6th Cir. 2008 citing *Sanders Confectionery Prods., Inc. v. Heller Fin. Inc.*, 973 F.2d 474, 480 (6th Cir.1992). The Court in

*Heike*, citing the United States Supreme Court, states:

> "The now-accepted test in preclusion law for determining whether two suits
> involve the same claim or cause of action depends on factual overlap." *United
> States v. Tohono O'odham Nation*, ⸺ U.S. ⸺, 131 S.Ct. 1723, 1730, 179
> L.Ed.2d 723 (2011) (emphasis added). "Two suits are for or [are] in respect to the
> same claim ... if they are based on substantially the same operative facts,
> regardless of the relief sought in each suit." *Id.* at 1731.

*Heike*, 573 Fed. Appx. at 483.

The facts necessary to support Debtor's argument that he did not own Digim, Inc. are the
same operative facts necessary to support Lontray's argument that it has an enforceable security
interest in Digim, Inc. The evidence that would be presented to this Court by Lontray in support
of its alleged secured claim is identical to the evidence that was introduced at trial by Debtor in
support of his argument that a collection action could not recover Digim, Inc. Because Lontray's
claim that it has a security interest, enforceable against a third party, is based on the same
operative facts and evidence as Debtor's claim that Digim, Inc. could not be attached by a
creditor, there is an identity of claims between this action and the District Court actions.
Accordingly, the fourth requirement for the application of the doctrine of *res judicata* has been
satisfied. The doctrine of *res judicata* bars Defendants from asserting that their alleged security
interest prevents Digim, Inc. from being liquidated for the benefit of Debtor's creditors.


E.     <u>There is no statute of limitations which precludes the Trustee from liquidating Digim, Inc.</u>

Defendants' third argument in its Motion for Partial Judgment on the Pleadings is that the
statute of limitations prevents the Trustee from recovering any transfers to Digital Image, LLC, or
recovering the profits generated by Digim, Inc. Defendants argue that Debtor transferred Digim,
Inc. to Digital Image, LLC in 2008 and, therefore, the Trustee's action is barred by the six year

27

statute of limitations set forth in MCL § 600.5813.[3]  This Court finds that Defendants' statute of limitations argument is based on a false premise, that premise being that Digim, Inc. was actually transferred.  The District Court has ruled that Digim, Inc. was never transferred to Digital Image, LLC.  The Trustee does not need to recover assets from Defendants because no assets were ever transferred to Defendants. Therefore, Defendants' argument that the statute of limitations requires dismissal of this case is rejected by this Court.

This Court notes that the Trustee is also seeking to recover the profits that should have flowed to Debtor from 2009 to the present, as a result of his ownership of Digim, Inc.  This Court finds that the Trustee is entitled to recover the profits which should have flowed to Debtor as a result of his ownership of Digim, Inc.  This recovery is limited by MCL 600.5813 to the six years prior to the filing of the adversary proceeding on December 9, 2015.  The profits that flowed from Digim, Inc., starting from December 9, 2009, are owed to Debtor's estate.  If the Trustee is unable to recover profits of Digim, Inc., the Trustee may need to seek recovery from the individuals or businesses that were the recipients of the profits.  Those actions will be governed by the statute of limitations for fraudulent transfer actions.  The applicability of the statute of limitations to a potential fraudulent transfer is not, however, the issue before this Court in this adversary proceeding.  In this adversary proceeding, the six year statute of limitations set forth in M.C.L. §600.5813 applies only to limit the Trustee to collecting profits owed to Debtor and paid out after December 9, 2009.

---

[3]MCL § 600.5813 states:

All other personal actions shall be commenced with in the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes.

## EFFECT OF THE DISTRICT COURT'S RULINGS ON THE PRESENT ADVERSARY PROCEEDING

A.  Effect of the District Court's Rulings on Counts I, II and V

As set forth, *supra*, the Trustee's First Amended Complaint seeks a declaratory judgment that Debtor owns Digim, Inc. (Count I), a declaratory judgment that profits flowing from Debtor's ownership of Digim, Inc. are property of the bankruptcy estate (Count II), and the avoidance of Lontray's alleged security interest in Digim, Inc. (Count V).  For the reasons set forth above, Counts I, II and V all state a claim which would entitle Plaintiff to relief.  Therefore, Defendants' Motion for Partial Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) is DENIED.

In addition, this Court finds it appropriate to grant judgment to the Plaintiff Trustee on Counts I, II and V of the First Amended Complaint.  Generally this Court would not enter judgment in favor of the non-moving party, but the facts of this bankruptcy case and this adversary proceeding require entry of judgment in favor of the Plaintiff.

11 U.S.C. § 105(c) permits the Court to:

> issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

"The basic purpose of 11 U.S.C. § 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction. . . Bankruptcy courts, both through their inherent power as courts and through the general grant of powers in 105, are able to police their dockets and afford appropriate relief." 2 Collier on Bankruptcy  ¶105.01 (Alan N. Resnick & Henry J. Sommers eds., 16th ed.)

29

This Court is entering judgment in favor of Plaintiff on Counts I, II and V of the First Amended Complaint because the orders of the Federal District Court entered on December 22, 2016 require that result. Any further litigation over the ownership of Digim, Inc. is unnecessary, a waste of the Trustee's time, effort and resources, and an abuse of the bankruptcy process by entities controlled by Debtor. Specifically, Count I of the First Amended Complaint seeks a "declaratory judgment that Digim, Inc, f/k/a Digital Image, Inc. is the owner of 100% of the assets of Digim purportedly transferred to Digital Image LLC and/or Lontray." (First Amended Complaint, Adv. Proc. Dkt. No. 23, at 9). As a result of the District Court's ruling that there are no questions of fact as to the ownership of Digim, Inc., the Trustee is entitled to judgment on Count I of the First Amended Complaint as a matter of law.

Count II of the First Amended Complaint requests that the Court enter a declaratory judgment that all "profits and other funds in excess of legitimate expenses derived from the use and operation of Digim's assets are property of Digim..." (First Amended Complaint, Adv. Proc. Dkt. No. 23, at 10-11). While the District Court did not expressly rule on the disposition of any profits flowing from Debtor's ownership of Digim, Inc., since Debtor has always owned the Digim stock, there is no question of either fact or law regarding his ownership of the profits flowing from his ownership interest. While there may be a question as to how much those profits are, or whether those profits were wrongfully transferred, those fact questions do not preclude the entry of a judgment holding that all profits flowing from Debtor's ownership interest of Digim, Inc. are property of the bankruptcy estate. Accordingly, the Trustee is entitled to judgment on Count II of the First Amended Complaint.

Count V of Plaintiff's First Amended Complaint seeks the avoidance of an unperfected

30

security interest and entry of a judgment "finding that the Digim stock is free and clear of any lien and/or security interest of Lontray..." (First Amended Complaint at p. 16). As fully discussed above, in its December 22, 2016 opinion denying Lontray's Motion for Mandatory Joinder, the District Court rejected Lontray's argument that it held a security interest in Digim, Inc. which precluded the transfer of Digim, Inc. to creditor BR North. Given the District Court's rulings, the Stock Pledge Agreement does not need to be avoided because its existence is immaterial. Even assuming that the Stock Pledge Agreement was enforceable between Debtor and Lontray, because Debtor and Lontray were coordinating their efforts to keep Digim, Inc. in Debtor-controlled entities, that Agreement is unenforceable against third-parties. There is no question of law or fact to be litigated on the issue of whether the Stock Pledge Agreement creates a lien enforceable against third-parties. It does not. Plaintiff Trustee is entitled to a judgment holding that Lontray does not have an enforceable security interest in Digim, Inc.

As further support for its conclusion that 11 U.S.C. § 105 requires the entry of judgment in favor of the Trustee on Counts I, II and V of the First Amended Complaint, this Court notes that this adversary proceeding, when it was originally filed, bordered on an abuse of the bankruptcy process. Allegedly, Debtor filed this bankruptcy case because he accepted the Magistrate Judge's Report and Recommendation, and he intended to monetize his interest in Digim, Inc. to repay his creditors. Notwithstanding Debtor's professed acceptance of the ruling of the Magistrate Judge regarding ownership of Digim, Inc., five weeks after Debtor filed for bankruptcy he filed this adversary proceeding against Lontray and Digital Image, LLC requesting that this Court determine the ownership of Digim, Inc. The issue of the ownership of Digim, Inc. was precisely the issue before the District Court in its consideration of whether to adopt the

31

Report and Recommendation. Debtor filed his bankruptcy case not because he had any intention

of liquidating Digim, Inc. and paying creditors, but rather to delay the District Court's adoption of

the Report and Recommendation. Similarly, he filed this adversary proceeding, not because he

needed this Court to determine who owned Digim, Inc., but rather because he hoped to give

Lontray an opportunity to re-litigate defenses which Debtor suspected were going to be

unsuccessful in District Court. As this Court fully detailed in a prior Opinion Denying the Fee

Application of Counsel for Debtor in Possession (Bankruptcy Case No. 15-55996, Dkt. No. 349),

Debtor filed his bankruptcy case without any intention of preparing a feasible plan of

reorganization, and he filed the adversary proceeding solely to re-litigate issues squarely before

the District Court. (Opinion, Dkt. No. 349, at 39-42). To allow Debtor and Defendants to deplete

the resources of the Chapter 7 Trustee and this Court in continuing to litigate issues settled by the

District Court amounts to an abuse of process under 11 U.S.C. § 105. Judgment is granted to the

Trustee on Counts I, II and V of the First Amended Complaint.


B.      Effect of this Court's Ruling on the Remaining Counts of Plaintiff's First
        Amended Complaint (Counts III, IV, VI, VII and VIII)

After Debtor converted his case from a Chapter 11 case to a Chapter 7 case, Plaintiff was

appointed as the Chapter 7 Trustee. On January 5, 2017, the Trustee and Defendants stipulated to

the substitution of the Chapter 7 Trustee for Debtor in this adversary proceeding. In hindsight, it

might have been a better course of action for the Chapter 7 Trustee to have requested dismissal of

this adversary proceedings on the grounds that the District Court's December 22, 2016 rulings

rendered any further litigation of the ownership of Digim, Inc. moot. But hindsight is

twenty/twenty, and in January, 2017, neither this Court, nor the Trustee, had fully processed the

District Court rulings and their impact on this adversary proceeding. Clearly concerned about

Lontray's vociferous argument that it had an enforceable security interest against Debtor's assets,

the Trustee filed an Amended Complaint on February 21, 2017. The Amended Complaint added

counts seeking revocation of the dissolution of Digim, Inc. (Count III), judicial supervision of

corporate officers (Count IV), a determination of interest in voting and distribution rights (Count

VI), the preservation of the benefit of any avoided transfers for the bankruptcy estate (Count VII),

and the disallowance of any proofs of claim filed by Digital Image, LLC and Lontray (Count

VIII).

Based on this Court's ruling that the Trustee is entitled to judgment on Counts I, II, and V

of the First Amended Complaint, the Court is dismissing Counts III, IV, VI and VII as moot. The

doctrine of mootness requires courts to dismiss issues on which there is no longer any

controversy. Put another way, mootness requires dismissal of a cause of action when resolution

of the cause of action can provide no additional relief than that already provided. *Already, LLC v.

Nike, Inc.*, 568 U.S. 85 (2013)("A case becomes moot – and therefore no longer a 'Case' or

'Controversy' for purposes of Article III - 'when the issues presented are no longer 'live' or the

parties lack a legally cognizable interest in the outcome.'")(citation omitted); *Ford v. Wilder*, 469

F.3d 500, 504 (6th Cir. 2006).

Counts III, IV, VI and VII are moot because the relief requested in those counts can

provide no further relief than that already granted. In granting the Trustee judgment on Counts I,

II and V, the Trustee now has the ability to administer Digim, Inc. Since both this Court and the

District Court have ruled that Debtor is the 100% owner of Digim, Inc., the Trustee can

33

administer that asset whether or not Digim, Inc. is a corporation in good standing. Because the

Debtor is the sole owner of Digim, Inc., there is no need for judicial supervision of corporate

assets. The bankruptcy Trustee is supervising the assets. And lastly, because Debtor never

successfully transferred Digim, Inc. to Digital Image, LLC, Lontray never had any voting or

distribution rights with regards to the Digim stock. Accordingly, Counts III, IV, VI and VII of

the Amended Complaint are dismissed as moot.

The Amended Complaint also contains Count VIII. Count VIII, which requests that any

claim filed by Defendants be disallowed until any judgment awarded against Defendants is fully

satisfied. This Opinion does not award a monetary judgment against Defendants, rendering

Count VIII unnecessary. Whether Defendants have an unsecured claim is an issue for another

day.

C.   Effect of this Court's ruling on Defendants' Counterclaim

On March 24, 2017, Defendants filed their answer to the First Amended Complaint.

Defendants also filed a counterclaim. The relief requested in Defendants' counterclaim is as

follows:

> That Lontray is a good faith transferee for value of all of the assets formerly
> owned by Digim and any proceeds therefrom;
>
> That Lontray holds a perfected security interest in the Digim shares, or
> alternatively, holds an equitable lien on the Digim shares;

(Adv. No. 15-5382, Dkt. No. 27, at 44).

Once again, Defendants are attempting to re-litigate the ownership of Digim, Inc. and the

enforceability of the Stock Pledge Agreement. For all of the reasons set forth above in this

Court's discussion of collateral estoppel and *res judicata*, this Court finds that these doctrines require dismissal of Defendants' counterclaim. The issues of whether there was a transfer of stock to Lontray or whether Lontray held an enforceable secured interest in Digim, Inc. have been raised and rejected by the District Court. Those issues cannot be re-litigated in this Court.

IV.

EFFECT OF THIS COURT'S RULING ON ADVERSARY PROCEEDING NO. 17-4751

On October 31, 2017, Plaintiff/Trustee filed a new adversary proceeding against Tracey Katzen, Lonie Glieberman, Sandra Glieberman, Lontray, and twenty three other entities in which Debtor may have an interest. (Adv. Proc. No. 17-4751). The adversary proceeding is a fraudulent transfer action against Tracey Katzen, Lonie Glieberman, Sandra Glieberman, and Lontray, and a complaint seeking to discover the scope of Debtor's interest in the remaining entities. In his response to Defendants' Motion for Partial Judgment on the Pleadings in this case, the Trustee expressed concern about how the Court's ruling in this case would impact adversary proceeding 17-4751. Specifically, the Trustee was concerned that, if the Court rejected the Trustee's argument that Lontray was Debtor's alter ego, that conclusion would undercut the Trustee's ability to challenge Debtor's relationship with Lontray in adversary proceeding 17-4751.

This Court is compelled to make clear that its ruling in this adversary proceeding has no bearing on any argument that the Trustee wishes to make in adversary proceeding 17-4751. Because the Court's ruling in this adversary proceeding rests on the doctrines of collateral estoppel and *res judicata*, this Court did not need to reach the issue of whether Lontray is Debtor's alter ego. This Court notes that, even if Lontray is not an alter ego, as a matter of law,

there is ample case law which allows a Trustee to ignore corporate formalities when a debtor uses entities owned by family members as his own personal pocketbook. *See e.g., In re Butler (Freelife International, LLC v. Butler)*, 377 B.R. 895, 918-19 (Bankr. D. Utah 2006). In any case, the sole ruling in this case regarding Lontray is that Lontray does not have an enforceable security interest against Digim, Inc. and Digim, Inc. is property of the bankruptcy estate.

V.

CONCLUSION

For all of the reasons set forth above, the Court finds as follows:

(1)     Digim, Inc. is property of the bankruptcy estate;

(2)     The Trustee may administer all assets of Digim, Inc.;

(3)     The Trustee may collect all profits flowing from Debtor's ownership of Digim, Inc. which were paid after December 9, 2009, except to the extent that the profits were spent by Debtor for reasonable and necessary expenses;

(4)     The Trustee is granted a judgment on Counts I, II and V of the First Amended Complaint, and that judgment permits the Trustee to take all actions necessary to effectuate paragraphs 1 - 3 above;

(5)     Counts III, IV, VI, VII, and VIII of the Complaint are dismissed; and

(6)     Defendants' counterclaim is dismissed.

**Signed on February 14, 2018**



/s/ **Marci B. McIvor**
_____
**Marci B. McIvor**
**United States Bankruptcy Judge**

36